IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILEY DERRELL REESE,
      Plaintiff,

vs.                                   Case No. 3:04cv17/RV/EMT

KEVIN COXWELL,
DEVIN SHANE HUNNICUTT,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon Defendants' special report and supporting documents filed on June 30, 2005 (Doc. 32). Plaintiff, proceeding pro se and in forma pauperis, responded to the special report (Doc. 40). On July 5, 2005, and October 7, 2005, the court entered orders advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment as of November 7, 2005 (Docs. 33, 41). Neither party has filed additional argument or Rule 56 materials. Upon review of the parties' submissions, it is the opinion of the undersigned that the motion for summary judgment filed by Defendants should be granted in part and denied in part.

I.       BACKGROUND

The following material facts are without substantial controversy.[1]  On November 14, 2003, Escambia County deputy sheriffs, including Defendant Hunnicutt, went to a residence in Escambia County, Florida, to serve a felony arrest warrant on Plaintiff (Doc. 32, Affidavit of Devin Hunnicutt ¶ 4).  Earlier that evening, Defendant Hunnicutt had been advised that there was an outstanding warrant for the arrest of Plaintiff for sexual battery (*id.*).  He had been told of two addresses where Plaintiff may be located, and to be on the lookout for a Chrysler vehicle with a specific license tag number (*id.*).  At approximately 9:30 p.m., Defendant Hunnicutt observed a Chrysler vehicle with a matching tag number back into the driveway of one of the suspected addresses, specifically, 23 Sandalwood Drive (*id.* ¶ ¶ 3, 4, attached Offense Report).  Hunnicutt stopped at the house and approached the driver of the vehicle, Henry Rankins (*id.*).  Mr. Rankins indicated to Defendant Hunnicutt that he resided at the 23 Sandalwood address with Plaintiff (*id.*).  Hunnicutt asked Mr. Rankins if Plaintiff was inside the residence, and Rankins responded that he did not know (*id.*).  Mr. Rankins gave Defendant Hunnicutt the key to the house and permission to enter (*id.*).

By that time, Defendant Coxwell had arrived at the scene with a canine (*id.*).  At the doorway, but before entering, Defendant Coxwell loudly announced the presence of the canine and that the dog would be entering the house (Doc. 32, Affidavit of Kevin Coxwell ¶ 6; Hunnicutt Aff. ¶ 5).  Also, the canine was barking (Coxwell Aff. ¶ 6; Hunnicutt Aff. ¶ 5).  The officers heard no response from inside the residence (*id.*).  Defendant Coxwell deployed the canine into the residence and commanded him to search (Coxwell Aff. ¶ 7).  Plaintiff was asleep when the officers entered the house (Doc. 20 at 7, continuation page).

The parties' versions of events significantly diverge as to the circumstances surrounding Defendants' capture of Plaintiff upon entering the house.  Plaintiff states he was asleep on the floor, when he was awakened by Defendant Hunnicutt stating, "Sheriff's Department, show me your

---

[1]The court conveys as facts those factual allegations of Plaintiff's verified fourth amended complaint, including attachments (Doc. 20), and Defendants' affidavits in support of their motion for summary judgment, including attachments (Doc. 32), which comply with the requirements for affidavits specified in Rule 56--that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed.R.Civ.P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n. 5 (5th Cir. 1980).

hands" (Doc. 20 at 7, continuation page; Doc. 40 at 4).  Plaintiff sat up on his knees and raised his hands (Doc. 20 at 7, continuation page; Doc. 40 at 4).  Defendant Hunnicutt hit Plaintiff in the back of the head with a flashlight, knocking him unconscious (Doc. 20 at 7, continuation page; Doc. 40 at 4).  When Plaintiff awoke, he was being dragged across the floor by the canine (Doc. 20 at 7, continuation page; Doc. 40 at 4).  Plaintiff screamed and pleaded with the officers to remove the canine (Doc. 20 at 7, continuation page; Doc. 40 at 4).  Defendant Hunnicutt responded by dropping his knee in the center of Plaintiff's back, thereby injuring him (Doc. 20 at 7, continuation page; Doc. 40 at 5).  Plaintiff was taken to the hospital for treatment (Doc. 20 at 7, continuation page).

Defendants recount Plaintiff's capture quite differently.  In his supporting affidavit, Defendant Coxwell states that upon deploying the canine into the residence, the dog went to the rear of the residence and indicated he had located someone (Coxwell Aff. ¶ 7).  As Coxwell followed the dog, he saw Plaintiff run and attempt to get on a table (*id.*).  When the canine located Plaintiff, he began biting him on his lower right leg (*id.*).  Defendant Coxwell instructed Plaintiff to show his hands, and when Coxwell observed that Plaintiff was not armed, he instructed Plaintiff to get off the table and onto the floor (*id.* ¶ 8).  Plaintiff refused Coxwell's commands and disappeared behind a wall, out of the officers' sight (*id.*).  Defendant Coxwell chased Plaintiff and wrestled him to the ground (*id.*).  Plaintiff continued to resist, so Coxwell attempted to strike Plaintiff on the shoulder with his flashlight, but instead struck him on the head, causing a small cut (*id.*).  Defendant Coxwell finally secured control of Plaintiff and placed him under arrest (*id.*).  Coxwell states the aforedescribed events occurred in a period of time lasting no more than sixty (60) seconds (*id.* ¶ 9).  Plaintiff was then taken to the hospital for treatment of the dog bite wounds and the laceration on his head (*id.* ¶ 10).

In Defendant Hunnicutt's supporting affidavit, he states the canine entered the house and, after a search, located Plaintiff (Hunnicutt Aff. ¶ 6).  Plaintiff refused to cooperate with Defendant Coxwell's commands to get on the floor and stop resisting (*id.* ¶ 7).  After a struggle, Coxwell was able to obtain control of Plaintiff and place him under arrest (*id.*).

In his response to the summary judgment motion, Plaintiff has submitted a verified response in which he recounts the facts as set forth in his complaint (Doc. 40).  In addition, he denies

Defendants' assertions that he refused Defendants' commands and ran from them (*id.* at 6). Additionally, Plaintiff states the incident lasted longer than sixty seconds (*id.* at 7).

## II.      PROCEDURAL HISTORY

Plaintiff filed his fourth amended complaint against Escambia County deputy sheriffs Coxwell and Hunnicutt, alleging civil rights violations under 42 U.S.C. § 1983 (unlawful entry and use of excessive force in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments).  Specifically, Plaintiff seeks to hold both Defendants liable for illegally entering the home.  Additionally, he seeks to hold Defendant Hunnicutt liable for using excessive force in hitting him on the head with his flashlight after Plaintiff put his hands up, and for dropping his knee into Plaintiff's back as Plaintiff was being dragged by the dog and pleading that Defendants remove it. He seeks to hold Defendant Coxwell liable for using excessive force in permitting the canine to bite him after he had been knocked unconscious and failing to remove the dog as the dog dragged him across the floor.  Plaintiff states he is suing Defendants in their individual capacities (Doc. 20 at 7). As relief, he seeks compensatory and punitive damages in a total amount of $80,000.00 (*id*. at 8).

Defendants, in their motion for summary judgment, assert that they are entitled to summary judgment on Plaintiff's claims of excessive force because Plaintiff's amended complaint fails to establish a constitutional violation (Doc. 32 at 3-6).  Additionally, they contend they are entitled to qualified immunity (further arguing that Plaintiff cannot meet the burden of demonstrating that they violated clearly established law) (*id*. at 6-10).

## III.     DISCUSSION

### A.      Federal Rights Potentially Vindicated by Plaintiff's Unlawful Entry and Excessive Force Claims

Because section 1983 is only an enabling statute, the court must discern the underlying federal right that is purportedly being vindicated by this action.  In his fourth amended complaint, Plaintiff claims that the Defendants unlawfully entered his residence and engaged in excessive force in violation of his rights under the Eighth and Fourteenth Amendments (Doc. 20 at 7-8).  It is clear that under either parties' rendition of the facts of this case, the proper standard of review is under the Fourth Amendment.

Plaintiff's claim of unlawful entry into his residence is governed by the Fourth Amendment. Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374-75, 63 L. Ed. 2d 639 (1980). Likewise, where, as here, the excessive force claim arises in the context of an arrest, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (quoting U.S. CONST. amend. IV and citing Tennessee v. Garner, 471 U.S. 1, 7-22, 105 S.Ct. 1694, 1699-1707, 85 L.Ed.2d 1 (1985)).  It is undisputed that Defendant Coxwell's use of the canine and Defendant Hunnicutt's hitting Plaintiff with his knee and a flashlight occurred in the course of Plaintiff's arrest. Thus, Plaintiff's claims are properly brought under the Fourth Amendment.  Therefore, to the extent Plaintiff brings a claim under the Eighth Amendment, such claim should be dismissed.  Plaintiff's only viable claims lie under the Fourth Amendment.[2]

B.      Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Id.  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.  Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus.

---

[2]Although Plaintiff does not explicitly reference the Fourth Amendment in his fourth amended complaint, the court construes his complaint as raising a Fourth Amendment claim.  The court has a duty to construe Plaintiff's pro se complaint in a liberal fashion, see Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) and Dean v Barber, 951 F.2d 1210, 1213 (11th Cir. 1992), and Plaintiff cited the Fourth Amendment in reference to the same claims in his previously filed complaints (see Docs. 1, 6, 10).

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986),
and a "scintilla" of evidence or conclusory allegations is insufficient.  Celotex Corp., 477 U. S. at
324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present
additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged
evidentiary deficiency.  *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . .
requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the
'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing
that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting Celotex Corp.,
477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).
Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all
reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff.
Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970);
Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be
granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue of material fact and that the moving
party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

      C.      Fourth Amendment Standard

          1.      Unlawful entry

      The Fourth Amendment generally prohibits the warrantless and nonconsensual entry of a
person's home to make an arrest.  Payton, 445 U.S. at 576.  "The prohibition does not apply,
however, to situations in which voluntary consent has been obtained, either from the individual
whose property is searched, . . . or from a third party who possesses common authority over the
premises, . . ." Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L. Ed. 2d 148
(1990) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L. Ed. 2d 854 (1973);
United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L. Ed. 2d 242 (1974)).
"Common authority rests on mutual use of the property by persons generally having joint access or
control for most purposes."  *Id.* (quoting Matlock, 415 U.S. at 171 n.7, internal quotation marks
omitted).

          2.      Excessive force

"The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest." Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004).  When a plaintiff alleges excessive force by an officer in the course of executing an arrest, he must show that the officer's conduct was objectively "unreasonable." Graham, 490 U.S. at 395-97.  Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action given the facts and circumstances confronting him.  Id. at 397; Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.").  The Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. Consequently, in determining whether an officer's use of force was objectively reasonable, thereby entitling the officer to qualified immunity, the court must consider several factors including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically."  Slicker v. Jackson, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (quoting Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11th Cir. 1992)(quoting Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir.1986))).  A court should also consider "(1) the underlying crime's severity; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists arrest or attempts to flee."  Lafavors v. Jenne, 2006 WL 249544, at *1 (11th Cir. Feb. 2, 2006) (citing Graham, 490 U.S. at 396).  Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.  In short, the Fourth Amendment prohibits force that is objectively unreasonable, both in the decision to implement the force and in the degree of force.  Graham, 490 U.S. at 394; Cottrell v. Caldwell, 85 F.3d 1480, 1492 (11th Cir. 1996).  In light of all of these considerations, the assessment of a police officer's use of force is a highly factual inquiry.

In the context of a police dog bite, the Eleventh Circuit has held that a police dog  bite after a defendant has been subdued, surrendered, or has ceased resisting or fleeing would violate the

suspect's constitutional rights.  *See* Priester v City of Riviera Beach, 208 F.3d 919, 924-25 (11th Cir. 2000).

> D.    Qualified Immunity

Defendants assert they are entitled to qualified immunity from suit in their individual capacities. The doctrine of qualified immunity is a guarantee of fair warning.  McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999).  It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee v. Ferraro, 284 F.3d 1188, 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Id.* at 1194.  The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury.  *Id.*

Second, if a violation has been established, the court must determine whether the right was "clearly established."  *Id.*  The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity.  Hope, 536 U.S. 739; Anderson v. Creighton,

483 U.S. 635, 640, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar.  Hope, 536 U.S. at 739.  Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id.*  In light of pre-existing law, the unlawfulness must be apparent. *Id.*; Creighton, 483 U.S. at 640.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

      E.     Conclusions of Law Regarding Material Facts

          1.     Unlawful entry

In the instant case, nothing in the record contradicts Defendant Hunnicutt's sworn affidavit that Henry Rankins indicated to Hunnicutt that he resided at 23 Sandalwood Drive with Plaintiff, and that Mr. Rankins gave Hunnicutt a key to the house and permission to enter.  Plaintiff did not submit an affidavit from Mr. Rankins, and Plaintiff could not contradict Defendant Hunnicutt's version of the facts because he admits he was asleep inside the house at the time of the encounter between Hunnicutt and Rankins.  Additionally, in light of Plaintiff's statement that he was asleep until after the officers had entered the house, and he awoke when they instructed him to show his hands, Plaintiff could not contradict Defendants' sworn statements that prior to actually entering the house, Defendant Coxwell loudly announced their presence.  Therefore, Defendants' entry into the residence did not violate Plaintiff's Fourth Amendment rights.  *See* Holmes v. Kucynda, 321 F.3d 1069, 1078-79 (11th Cir. 2003) (officers were entitled to qualified immunity on Plaintiff's Fourth Amendment claim of unlawful entry where officer testified he asked third party resident if he could enter apartment, and resident stepped away from door in gesture of acquiescence, where resident did not testify, and Plaintiff could not contradict officer's version of facts because she was not there to view the encounter).

          2.     Excessive force

Defendants argue:

. . . Coxwell deployed the K-9, named Atos, into the residence and gave him a command to search.  The residence was cluttered and Atos had to climb over items to engage in the search.  At the rear of the residence, Atos reacted to let Coxwell know that he had located someone.  As Coxwell followed Atos into the residence he saw the suspect run and try to get on a table.  When Atos located the suspect, who proved to be Wiley Reese, he apprehended the suspect by biting him on the lower right leg.

Coxwell then instructed Reese to expose his hands and when Coxwell saw that Reese was not armed, he instructed him to get off the table and on to the ground. Reese refused these commands, fled and disappeared behind a wall, out of sight. This caused Coxwell to have to chase Reese and, after making contact with him, to have to wrestle him to the ground.  Because of his continued resistance, Coxwell attempted to strike Reese on the shoulder with his flashlight, but instead struck him on the head, causing a small cut.  Coxwell was then finally able to secure control of Reese and place him under arrest

(Doc. 32 at 2-3).  Thus, Defendants maintain that Plaintiff has failed to establish that they committed a constitutional violation.  They further contend:

No record evidence exists that Defendants took any actions that a reasonable officer would know violated clearly established law.  Defendant merely sought out a felony suspect, the Plaintiff, for whom a warrant existed and did so by entering a residence with the permission of the owner.  Prior to entering the residence with a K-9 dog, the Defendants announced their intentions and provided Plaintiff every opportunity to reveal himself and to surrender.  When the law enforcement K-9 discovered Plaintiff, the K-9 bit Plaintiff without being commanded to do so.  Thereafter, Plaintiff violently resisted the efforts of the Defendants to take him into custody or to subdue him, resulting in blows being struck against Plaintiff.  Simply stated, at the time of this event, there was no decisional law from the U.S. Supreme Court, the 11th Circuit, or the Florida Supreme Court, in a factually-similar case, putting Defendants on notice that their actions violated clearly established law.

(id. at 9-10).

The parties do not dispute that Defendants performed the alleged wrongful acts while acting within the discretionary authority of their employment.  The problem with Defendants' argument is that the facts to which they refer are based on their version of events.  In analyzing whether Defendants are entitled to qualified immunity, the court must take the facts in the light most favorable to Plaintiff and determine the legal issue of whether Plaintiff's facts, if proven, show that Defendants violated clearly established law.  Priester, 208 F.3d at 925 n. 3 (citing Kelly v. Curtis,

21 F.3d 1544, 1546 (11th Cir. 1994)).  The court has already set forth the facts which, based on the summary judgment record, are not in dispute.  These facts establish the events leading up to Defendants' discovery of Plaintiff.  The parties sharply dispute the circumstances surrounding Plaintiff's capture.  These disputed facts are critical to Plaintiff's excessive force claim.[3]

Taking the summary judgment evidence in the light most favorable to Plaintiff, Plaintiff has stated a constitutional violation.  Plaintiff was the subject of an arrest warrant for a violent felony.  When deputies arrived at the residence to execute the warrant, Plaintiff was asleep on the floor.  Defendants awakened Plaintiff by commanding him to show his hands.  Plaintiff sat up on the floor and raised his hands.  Defendant Hunnicutt hit him in the head with a flashlight, knocking him unconscious.  When Plaintiff regained consciousness, the canine was pulling him across the floor.  Plaintiff begged and screamed for Defendants to remove the dog.  In response, Defendant Hunnicutt dropped his knee to the center of Plaintiff's back.  As a result of the incident, Plaintiff sustained injury to his back, a laceration on his head, and injury to his leg.  Given these facts, a reasonable jury could conclude that Defendant Coxwell's use of the canine and Defendant Hunnicutt's use of his flashlight and knee in the manner described constituted unreasonable and excessive force in violation of Plaintiff's constitutional rights under the Fourth Amendment.

"The next, sequential step [in the qualified immunity analysis] is to ask whether the right was clearly established."  Saucier, 533 U.S. at 201.  The applicable law being "clearly established" is what ensures that the official has notice or "fair warning" that his conduct is unlawful.  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir.), cert. denied, 540 U.S. 816, 124 S.Ct. 76, 157 L. Ed. 2d 32 (2003) (citing Saucier, 533 U.S. at 205-06).  The Supreme Court and the Eleventh Circuit have explained that such fair and clear notice can be given in various ways.  First, the words of the pertinent federal constitutional provision "may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  Vinyard, 311 F.3d at 1350.  Second, if the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face, the

---

[3]To list just a few examples, genuine issues of material fact exist as to Plaintiff's physical position when Defendants discovered him; the substance of Defendants' commands to Plaintiff and whether Plaintiff followed them; whether Plaintiff had surrendered at the time he was bitten by the dog, hit with the flashlight, or "kneed" in the back; whether Plaintiff was specifically resisting arrest or attempting to flee at any of those moments; etc.

court then turns to case law.  In some instances, general decisional rules (broad statements of principle in case law that are not tied to particularized facts) can clearly establish law applicable in the future to different sets of detailed facts.  "These precedents are hard to distinguish from later cases because so few facts are material to the broad legal principle established in these precedents; thus, this is why factual differences are often immaterial to the later decisions."  Vinyard, 311 F.3d at 1351.  Third, if the court has no case law with a broad holding that is not tied to particularized facts, the court then looks at precedent that is tied to the facts.  The fact-specific precedent can clearly establish the applicable law "if the circumstances facing [the] government official are not fairly distinguishable" from that precedent.  Id.

In excessive force cases in the Fourth Amendment context, the Eleventh Circuit has noted that generally no bright line exists for identifying when force is excessive; thus, the Circuit Court has concluded that "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity."  Priester, 208 F.3d at 926 (citation omitted).  However, a narrow exception to the rule requiring particularized case law exists. Id.  "When an excessive force plaintiff shows that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, the official is not entitled to the defense of qualified immunity."  Id. (internal quotations and citations omitted); Willingham, 321 F.3d at 1303 ("[A]n official's conduct could run so afoul of constitutional protections that fair warning was present even when particularized caselaw was absent.").

> To come within the narrow exception, a plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point.  This test entails determining whether application of the excessive force standard would inevitably lead every reasonable officer in the Defendants' position to conclude the force was unlawful.

> Under both the general rule and its narrow exception, therefore, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances for qualified immunity to be unavailable to a defendant.

Priester, 208 F.3d at 926-927 (internal quotations and citations omitted); *see also, e.g.*, Lee, 284 F.3d at 1199 (denying qualified immunity--without particularized precedent--in excessive force case where officer slammed arrestee's head on car trunk after "she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed"); Slicker, 215 F.3d 1225, 1233 (11th Cir. 2000) (denying qualified immunity--without particularized precedent--to officers who slammed arrestee's head into pavement, "even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way); Smith v. Mattox, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (concluding officer's conduct was "far beyond the hazy border" and unlawfulness was "readily apparent even without clarifying caselaw" when officer, while on plaintiff's back and handcuffing him, broke plaintiff's arm requiring surgery for multiple fractures even though plaintiff at the time was offering no resistance at all).

The undersigned is persuaded that the law was clearly established in November of 2003 (the date this incident occurred) that what Defendants did (according to Plaintiff's version of events) violated Plaintiff's constitutional rights. According to Plaintiff's version as previously recounted, even conceding that Plaintiff was the subject of an arrest warrant for a violent felony and who had initially failed to respond when Defendants announced their presence prior to entering the house, the facts remain (at least according to Plaintiff) that after Defendant Hunnicutt discovered Plaintiff and ordered him to show his hands, Plaintiff sat up on the floor and raised his hands. While Plaintiff was complying with Defendant Hunnicutt's command, Hunnicutt hit him in the head with his flashlight with such force that Plaintiff was knocked unconscious. While Plaintiff was unconscious the canine, who was in Defendant Coxwell's control, began biting Plaintiff and dragging him across the room. When Plaintiff awoke and pleaded with the officers to remove the dog, Defendant Hunnicutt dropped his knee onto Plaintiff's back and handcuffed him. Plaintiff was treated at a hospital for physical injuries from the dog bite and the hit on the head. According to Plaintiff, after his discovery by Defendants, he surrendered, and at no time after his discovery did he resist arrest, attempt to flee, or pose a threat to anyone's safety. On these facts, no particularized preexisting case law is necessary for it to be clearly established that Defendants alleged actions violated Plaintiff's constitutional right to be free from the excessive use of force. Even if Defendants' conduct did not come within the "no particularized preexisting case law" exception, the Priester case dictates the

conclusion that no reasonable law enforcement officer could believe this force was permissible given these alleged circumstances.[4]  Should Plaintiff prove his version of the facts, Defendants are not entitled to qualified immunity.

IV.    CONCLUSION

Based on the foregoing, the undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's unlawful entry claim.  Defendants are not entitled to summary judgment on Plaintiff's excessive force claims, nor are they entitled to summary judgment based on qualified immunity.  Of course the court does not on this record resolve the disputed factual issues.  It will be Plaintiff's burden to prove his version of the facts to a jury.

Accordingly it is respectfully **RECOMMENDED**:

1.      That Plaintiff's claims under the Eighth Amendment be **DISMISSED**.

2.      That Defendants' motion for summary judgment (Doc. 32) be **GRANTED IN PART AND DENIED IN PART** as follows:

a.      Defendants' motion for summary judgment be granted as to Plaintiff's Fourth Amendment claim of unlawful entry.

b.      Defendants' motion for summary judgment be denied as to Plaintiff's Fourth Amendment claims of excessive force against Defendants.

3.      That the clerk be directed to return this file to the undersigned for further proceedings.

---

[4]In Priester, Plaintiff was a suspect in the burglary of a golf shop in which approximately $20 of snacks and crackers were stolen.  208 F.3d at 927.  When the police discovered Plaintiff lying in a canal, he voluntarily stood up and put his hands in the air, thereby immediately submitting to the police.  Id. at 923, 927.  When ordered by Defendant to get down on the ground, Plaintiff complied, but Defendant ordered and allowed his dog to attack and bite Plaintiff; threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two minutes.  Id. at 927.   Considering these facts, the Eleventh Circuit held that no particularized preexisting case law was necessary for it to be clearly established that what Defendant did violated Plaintiff's constitutional right to be free from the excessive use of force.  Id.  Indeed, no reasonable police officer could believe that this force was permissible given these straightforward circumstances.  Id.

At Pensacola, Florida this 9<u>th</u> day of February 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

      **Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**